Equal Employment Opportunity v. UPMC Mr. Ramshaw, good morning. Thank you. Good morning, Your Honor, and thank you. May it please the Court, my name is Paul Ramshaw for the EEOC. Under Cronus, the District Court clearly erred in refusing to enforce our subpoena here. The District Court... Yeah, but how would other workers, and in particular other locations, be relevant to the claim in this case? For several reasons, partly because they provide a useful context, they provide comparison data, but most importantly because UPMC has told us that these were not individual discretionary decisions by the managers. These were decisions that were dictated by the policy, and the policy is a UPMC policy. Once they've told us that they're relying on the policy, then we need to figure out, is that policy applied consistently? You know, they say the policy dictates the outcome. So one of the things we want to know is, is that true in practice? For example, if it turns out that if we learn that managers think they have a fair amount of discretion and they give extended leave for some reasons, like finishing an academic degree or working for the government or something, but they don't with respect to disabilities, then they don't have a consistent policy defense. On the other side, even if they enforce their policy strictly and they fire everybody who fails to come back after the 14th week or the 26th week, then they've got a problem with the ADA because the ADA not only forbids discrimination, it also requires reasonable accommodations. And so it looks like their policy is saying to the managers, you cannot, if a person with a disability comes to you near the end of their 14 or 26 weeks and says, I have a disability and I need, you know, another week or, you know, I need two more days. Well, how is disability relevant here? This is absence really, wasn't it? She was actually fired under the personal leave of absence policy, wasn't she? Right, but that's their, in her case, it was a medical leave. And she's alleging that, she's alleging either or both disability discrimination and they fired me after the 14th week when they don't fire everybody after the 14th week or failure to accommodate. I had a disability when, when my 14 weeks were up, they had an obligation, you know, they knew that I was having cancer surgery. They knew I couldn't come to work on the next day. They had an obligation to engage in an interactive process with me and to make an individualized assessment about whether extent, to some extent, the leave was a reasonable accommodation for me in the act. But, but to follow up on Judge Van Antwerpen's question here, if we're looking at the disability claim, it would seem to me that the reasonable accommodation part and whether somebody fit the qualifications of the job are so individual to each plaintiff that information company-wide would not be helpful to you in proving that. Am I correct about that? Under the second interpretation, under the second problem we have with the policy, no, it would be relevant. Because the point is that the act requires the employer, when a person with a disability needs reasonable accommodation, they're supposed to let the employer know and then they're supposed to engage in an interactive process and try to determine whether the employer can, without reason, undue hardship, grant that reasonable accommodation. And here, the policy prevents that from happening. The policy says to the managers, you can't do that. It doesn't matter. It doesn't matter whether they need one extra day or ten weeks. You can't give them any additional time. It really sounds like what you're coming back to is whether there was unequal treatment here. I mean, couldn't you just confine it to her case? Did you sit down with her and attempt to reach a reasonable accommodation, with the understanding that a reasonable accommodation may be some additional time before she needs to come back to work prior to being terminated? But why go off and look for this type of situation with regard to others that are not relevant to Ms. Galey? Well, we believe it is relevant to Ms. Galey's charge, both because under the unequal treatment, yes, perhaps. But under the reasonable accommodation, why not just confine it to her? Your Honor, we could have, but we did not need to. When the Commission is charged with enforcing its statutes in the public interest, when a person – and this is very close to what happened in Kronos. In Kronos, Vicki Sandy filed an ADA charge that was clearly an individual claim. She said, a manager at a Kroger's store in West Virginia discriminated against me one day by not hiring me. In their position statement, they said, well, one of the reasons we didn't hire her is because she did so poorly on this Kronos assessment test. And based on that information and the knowledge that Kroger used the Kronos assessment test nationwide and for most of its hiring positions, this Court said that the Commission had every right to investigate the effect of that test nationwide and for all hiring positions before we had – the Commission, when we receive a charge, we are not limited to that – we're not representing that person exclusively and we're not limited to investigating that individual claim. We're supposed to enforce our statute into the public interest. If something comes to our attention, as it did both in Kronos and here, from the employer in its position statement, that while there may be a bigger problem here, we are free and arguably have a duty in the public interest to look at the bigger problem. To what – the language relevant to the charge under investigation is – you're saying that that language doesn't cabin you at all, that you can – Oh, it clearly applies and the information we're seeking is relevant to her individual claim, both because they're relying on the policy as a – I'm sorry. Yeah, no, no, no. I'm still having trouble to see – trouble seeing how it is relevant to the reasonable accommodation part of the charge. Well, it's – it's relevant because – I mean, Judge Ambrose suggested, I think, suggested that we could have investigated the reasonable accommodation part just by asking what happened in her case, just by asking what happened in her case. Just by talking to her supervisor or her manager. And we could have done that, but we are equally focusing on her reasonable – her failure to accommodate claim by trying to figure out, is this – you know, they said to us, we don't sit down and talk with people about what happens after 14 weeks. After 14 weeks, you're out, okay? It doesn't matter if you have a disability and whether there could have been a reasonable accommodation, that's all you get. So that we are trying to – this – if that's true, we're trying to figure out, is that true? Do they really fire everybody after 14 or 26 weeks? And if they do, that appears to us to be a systemic failure to reasonably accommodate. What about the – UPMC says that you could have filed a commissioner's charge. Why do you think that wasn't necessary in this case? We could have, but it's not necessary here because under CRONUS, we were – it was legitimate for us to investigate the charge as it applied to all of UPMC's employees without getting a commissioner's charge. There was no commissioner's charge in CRONUS. And what – can you tell me exactly what a commissioner's charge is? How does that come about? Is that initiated by – A commissioner charge can arise all sorts of ways. If we read a news story or someone comes and complains with us but doesn't file a charge or based on the reports that people file, if a commissioner comes – believes that there may well have – that there may have been discrimination here, the commissioner signs an oath to that effect and files a commissioner charge and then the investigative staff proceeds to investigate that as if it were an individual charge. And it – our saying that it's not necessary here does not render the statutory provisions for it superfluous because A, we need the commissioner's charge when no one has filed a charge, and B, we need a commissioner's charge when an individual has filed a charge but the investigator doesn't notice or chooses not to pursue information suggesting a systemic claim. I forgot – I'm sorry. I forgot at the beginning to ask to reserve time. If I may reserve – Very good. If I may reserve four minutes, please. Apologies. I jumped out there with the question a little too fast. But did you have a further question, Judge? We'll give you four minutes. Thank you. Thank you. Mr. Myers, good morning. Good morning, Your Honors. I'm John Myers. I represent the appellee. I wanted to make four points in my argument here. But before I do so, I'd like to bring to the attention of the Court a very significant decision of the Tenth Circuit Court of Appeals that was filed last week. The case is EEOC. It's a published opinion. EEOC v. Burlington Northern and Santa Fe Railroad Company. It was decided February 27, 2012. And it's Civil Action Number 11121. That case involved an EEOC investigation of an ADA charge filed by two individuals in which the EEOC attempted to subpoena information into a pattern in practice involving many other individuals. The subpoena was denied in the district court and was found not to be an abuse of discretion by the Court of Appeals for many of the reasons that we've argued in our brief, including... But the problem we have here is that you've got a decision of this court that appears to be, I mean, right on point. I must tell you, when I first looked at this, I'm not speaking for my colleagues, I thought, well, you've got a great position, the decision of Judge McVeary. Then you look at Kronos, and that doesn't mince words on the disability issue. And this seems to be, you know, whether you like it or not, I mean, that's precedent of our court. And absent going in bank, it seems like you're really behind the eight ball. Let me start, John. Kronos is very distinguishable, and I want to do that. But let me first start with the statutory language, because I think that's where the EEOC's case falls by the wayside. Why don't you deal with Kronos first, and then we'll go to the language, to the basis for it. In Kronos, the EEOC, in its investigation, learned that the plaintiff filed an individual charge of disability discrimination. The EEOC learned that she was denied employment because of a test that was created by Kronos. She was refused employment by Kroger Company. So the EEOC, in order to investigate the legality of the test, issued a subpoena on the third party, a third party subpoena on Kronos. All of the information that the EEOC looked for in the Kronos case, in its subpoena, and it was a very broad subpoena, but it all had to do with the use and the validity of that test that was used by Kroger Stores. They expanded the subpoena twice, once to deal with disability and the second time to deal with race, correct? Right. This court denied the enforcement on the race point. On the disability point, in order for the EEOC to come to a decision or to investigate whether the test was legal, it needed all of the information about how the test was used with respect to other employees and other applicants, as well as the validity studies that had been done by Kronos. And the reason for that is because that all goes to the issue of whether they could show adverse impact. So they needed to look at the entire history of the application of the test. So they're looking at a systemic issue relating to the Kronos assessment and the EEOC is saying, here, that's exactly what we're doing. But the relevance of the test in that case was, if the test based on this data was unlawful, then it was unlawful to use it with that particular plaintiff. But the EEOC is saying somewhat the same thing here. Two problems. One, we are being – look, number – there's a – before you get out of the dugout, Heritage brought up the UPMC policy. And so they put it into play. Number two, there was the possibility here that there was unequal treatment. We wanted to see if there was unequal treatment. And we needed to investigate that. Three, she's entitled to reasonable accommodation. And a reasonable accommodation in certain cases means you sit down with her and you explore the possibility of additional time. And you're not doing it, and you may not be doing it systemically. Therefore, we have a right to investigate that systemically. But the difference is that in this case, the validity or the lawfulness of that policy as applied to Ms. Gailey doesn't turn on what happened or how it was applied to other persons. Whereas in the Kronos case, in order to determine the lawfulness of the test, the EEOC had to look at how it was used and applied with other employees because that's the only way they could find out whether the test was an illegal test. Here you have a – Without putting words in your opposing counsel's mouth, he's saying, look, once it comes to our attention that there may be a systemic issue, we cannot turn our heads. We can't just pretend it doesn't exist. We at least have to – or may not exist. We have to at least explore it. That's what they're saying they have the right to do here. Absolutely. And that's – you know, the EEOC does, and they have the weapons to do that under the statute. But to finish up with the Kronos issue, if one found on discovery that there had never been any other employee who had been subjected to this policy at all, well, that doesn't mean it's okay not to terminate Ms. Gailey. You have to look at her situation. What kind of extension did she need? Did she even have a disability? On the other hand, if you find it was applied to many other people, that still wouldn't tell you that it was unlawful to use it with Ms. Gailey because there's no indication that Ms. Gailey was able to come back to work with a short extension of time. In other words, no matter what – the policy says what it says, and it's only how it applies to Ms. Gailey that's conceivably relevant to the investigation of her charge. Now, under the statute, it's the – Didn't her intake questionnaire say she requested disability accommodations? Pardon me? Didn't the woman in question here, didn't her intake questionnaire say that she requested disability accommodations? She said in her intake questionnaire that the last time she did so was in November of 2007, which is seven months before her termination, and her request was that she be put on this – on short-term disability and then given a modified job duties, and that was done. So she specifically says, the last time I requested leave – I'm sorry, an accommodation was in November of 2007. There's nothing in any of the documents that she filed or the EEOC filed to suggest that either she requested an extension of leave or that she could have returned to work if she had been given a reasonable additional extension of leave beyond the personal leave that was granted to her when she had exhausted her STD. And didn't the district court in this case really apply a would-cast-light-upon standard rather than a might-cast-light-upon standard? Your Honor, it used that word – it used that language right at the end of its opinion, but it's clear from the discussion that it cited and quoted the cast-light-upon standard that is – that we certainly agree comes right from the Supreme Court, and it is the applicable standard. But under the – to get – Yeah, but under Shell Oil – well, all right. You feel they complied with Shell Oil and Franklin and Marshall on this claim? Absolutely, Your Honor. The – under – to answer the question, though, about the – what does the EEOC do if it suspects that there's a systemic issue? The statutory scheme makes it clear that what it – that it can't use an investigation of an individual charge to discover whether there might be other victims out there unless the existence of the other victims is itself relevant to the investigation of the existing charge. Now, what's your authority for that? Section 709. It limits the EEOC's discovery to information relevant to the charge under investigation. Now, on the other hand, Section 707E of the statute expressly authorizes the EEOC to investigate and act on pattern and practice charges by filing a commissioner's charge. It has the – Congress has given the EEOC the authority, if it suspects there's a violation and it wants to find out if there are other victims, to initiate a commissioner's charge. But it does not permit any individual entry-level case investigator who happens to be handling a case to take it upon himself by issuing a subpoena to convert an individual charge into a pattern and practice case. Now, let's go back and look at 709, that the – relevant to the charge under investigation. Maybe if you're looking at a systemic issue, that's maybe correct. But if you're looking to unequal treatment where others treated differently, then isn't it relevant to the charge under investigation? It would be if this were a – let me distinguish the – there are a number of race and sex discrimination cases where the courts have said that discovery of how the employer treated other similarly situated individuals is relevant to the charge under investigation because when you're talking – if the employer discriminated against other minorities, for example, or treated other women differently, then that tends to show that the charging party was treated the way she was or he was because of his race or sex because it's inherently class-based discrimination. No, I'm sorry. No, finish that, please. Race and sex are inherently class-based. But when you're dealing with a disability case, there's no suggestion here that non-disabled persons are treated differently. I mean, the policy doesn't even – But isn't that the argument, that they are treated differently? No, their argument – well, the argument that they've made and their justification in the district court and predominant justification here is that they want to look into the issue of whether we should have accommodated her. They say our policy doesn't permit reasonable accommodations. And even if that were – I'm sorry. No, no, no. You go ahead. Even if that were the – I mean, taking that as the reason, which is the express reason, it still doesn't shed any light on Ms. Gailey's charge for two reasons. First, if you read the application of the EEOC and you look through the record, the EEOC has the obligation to come into court and show the relevance of the subpoena. In other words, the EEOC has to show that there's some reason to think that this person could have returned to work if they had been given an extension of leave. Now, they could easily do that. They represent they're standing in the shoes of the victim when they come into court. The EEOC never filed any information about – that would tend to show that this is even an accommodation case or a disparate treatment case. And this is what Judge McVeary was getting at when he took them to task by saying you've had two years to investigate Ms. Gailey's case and you can't even tell me whether she was able to return to work if she was given an accommodation. And that's what he got at in his opinion. So they haven't laid that groundwork. And that – well, that makes sense, but didn't that happen in Kronos too? No, it didn't, Your Honor. The EEOC in Kronos actually discovered the information that resulted in the subpoena in their investigation and they came into court. So there was no investigation of Ms. Gailey's circumstance? If there was, it's not in the record and there's no – for serving a subpoena that's predicated on the need, the alleged need, to see whether she should have been granted reasonable accommodation. Before I forget, I'm not sure we're finished on this point, but Judge McVeary made no finding with respect to the burdens that this kind of subpoena would impose. Am I correct? That's correct. So if, let's say, we disagree with you, would your argument be that we should send it back to Judge McVeary and have him evaluate that fact? That's precisely – that was my fourth point. Well, he did say – I mean, just looking at the opinion, I think he said on page 5 that the EEOC bears the burden to demonstrate relevance. And the only other thing I see after that, he says on page 7, which is appendix 8, moreover, EEOC has failed to satisfactorily explain how the information requested in the subpoena would cast light on Gailey's claim. So I'm not sure it's possible he may have intended that sentence to mean that they haven't met their burden. And somewhere in the opinion, he makes a comment that they hadn't used – to the point where they could show that she required an accommodation. And I think the EEOC, in fact, in their opening brief, complained that the judge was – complained about the judge's criticism of their failure to investigate her specific case. But back to Kronos. If the – Ms. Sandy had a claim that she should have been brought in and hired as a cashier checker at BAGR, and this test was used to turn her down, the EEOC comes in and they say, yes, applied to her, this may be a problem, but also we think it may be applied to others, and we're unsure about this test. So they send out a subpoena. And then they expand the subpoena to say maybe it's being used for people who they perceive have disabilities. And then they say, okay, maybe it's being used to eliminate people who – because of race. Sounds to me like that's far beyond the individual case that Ms. Sandy may have had, and I have trouble distinguishing it from our case. There was nowhere in the Court's opinion, in this Court's opinion, that suggested that the justification for that subpoena was anything other than to measure the lawfulness of the exam as it was applied throughout the Kroger organization. There was no suggestion that it could be justified on the grounds that there might be other victims out there that we can find and add to this claim. And that's what the EEOC is trying to do here. But they're saying, as I understand it, they're saying, irrespective of whether somebody would be qualified to do the work or whether there might be reasonable accommodations, the employer here simply has a blanket policy that, after a certain number of days, they're going to fire you. And we want to find out whether, in fact, that's the case system-wide. Am I misstating their position? Are you asking me that? Yes. Oh, I'm sorry. Yes. I think they are saying something like that. I don't agree that that's what our policies say, but assuming they do, they certainly have the authority and the statutory scheme set up where they can address that through a commissioner's charge. But it would require a commissioner of the EEOC to come to that conclusion and to authorize the filing of that charge, not just a ground-level investigator who decides to serve a subpoena. But might they not have to look into how it's applied in individual situations to determine whether or not that is the case? And isn't that just what the government just said? Well, that would read totally out of the statute the limitation that the subpoena must relate to the charge under investigation, not to discovering, you know, to finding all of the sins that might be present in one company. That's what a commissioner's charge is for, Your Honor. Good. Any other questions? Good. Thank you, Mr. Myers. Thank you. Mr. Ramshaw. May it please the Court. A number of things I'd like to respond to. First of all, they said here, and they said in their brief, that Gailey said in her intake questionnaire that she only asked for an accommodation once, and that was in November. That's simply not true. This is appendix page 75, and it's question 10. The question asks, did you ask for an accommodation, rephrasing it, and then you answer yes or no, and then it says, if yes, when? And then it gives you one line that's one inch long. It assumes you only asked once. She answered that honestly. I asked in November of 2007. She nowhere says that that's the last time or the only time that she asked for an accommodation. We know it's not. We know that UPMC concedes that in May she asked for additional medical leave. He suggests that it's the low-level, you know, investigator who decides who to subpoena something. That's not true. The subpoena has to be signed by the district director, and it was here. And then they get the petition to modify or revoke. That goes to the commission. So the commission has reviewed this subpoena and agreed that it should be enforced as is. He says disability discrimination is different from race or sex. And if the disability discriminations were individual discretionary decisions, that would be true. But here they are saying, no, they're not individual discretionary decisions. It's the policy that dictates it. That's why other cases are relevant here when they might not be in other kinds of disability cases. If they had not tendered that as a defense, that there was this blanket policy, would we be in a different situation right now? Yes, definitely. Yeah. You're saying Heritage opened the door by giving you the UPMC policy as opposed to their own? Right. I mean, the question is whether we uncover information in our investigation that leads us to believe that other employees are being discriminated against in the same way. In both Cronus and here, the way that happened was the defense they came back with in their position statement. In Cronus, in Kroger, they said we relied on the Cronus test. And here they said the outcome is dictated by our policy. In connection with Cronus, in that case, you had somebody that you could determine at the outset was hearing and speech impaired. And the EEOC had, first of all, a general subpoena related to the test that they, and the manuals for those tests for assessing employees. And if they had stopped there and didn't go on to disability, which would have applied to the individual who one could argue was disabled, and didn't go on to race, or actually did go on to race, and the court found that that went too far, let's say they didn't go on to disability. I'm sorry, who's the they? The EEOC. Okay. Does not, has the general subpoena relating to the tests and the manuals for those tests of Cronus. Do you really think the court would have come down in your favor, absent the disability addendum later on when the subpoena was amended? I think what I hear the opposing counsel saying is, in effect, that's how this case, maybe I'm putting words in his mouth, that's how this case is different than Cronus. Okay. When you applied it to disability, you brought it home to an individual. But it started, in Cronus, the charge was a disability discrimination claim, an individual claim of disability discrimination. Cronus said, no, we didn't reject her because she has a disability, we rejected her because she did poorly on this test. And so then this court said it was legitimate for us to look at how that test worked with respect to persons with disabilities. There seems to be an argument there that if all they asked, if all that the EEOC asked for were the tests applied by Cronus and the instruction manuals pertaining to those tests, that might not have passed muster. But when they asked how those tests, they asked about disability, they expanded the subpoena. The fact that Ms. Sandy was disabled made it relevant to the individual. But here, you're asking, you're going onto the systemic issue without really tying it back in to Ms. Gailey. I mean, that's the argument he's making. And he's saying that if you're going under 709, it's very different from 707E. 707E appears to allow the expansion or the, quote, fishing expedition or whatever you want to call it. But 709 doesn't. I don't have as great a command of the facts in Cronus as I wish I did. I didn't, I thought that what happened there was she thought. I'm just asking a question. I'm not trying to tell you that this is, but trying to read through the lines of what your opposing counsel is saying, that's sort of what I'm coming up with. And I'm sorry, I don't understand the distinction. Because as I understood what happened in Cronus is we first asked Kroger, okay, well, tell us about this test. Tell us about validity studies. Tell us about how. And they didn't want to give us anything. So then we issued a third-party subpoena to Cronus instead of to Kroger. I don't think, it was all, disability was always there as the basis of the claim. I'm not. The claim was expanded. There were two amendments to the subpoena in Cronus. The first one asked about the validity studies relating to the Cronus test and the instruction manuals. It was expanded to include the issue of disability, I'll read it, with respect to the use of the assessment test in hiring. And it seems one could make an argument that that expansion to deal with the disability, which applies directly back to a person who's hearing and speech disabled, makes it relevant because you tie it back to an individual. But if you're going to just go off looking for a systemic violation and not tying it back to an individual, there's a problem. And you can distinguish it from Cronus in that context. I believe that here our investigation of what the policy means in practice, how it's applied, how the other managers understand it, whether they have discretion or not, that is relevant to Gailey's charge because we need to figure out whether a reasonable accommodation is off the table or, in fact, the policy may be being applied discriminatorily. So your position is it makes no difference whether, in fact, she couldn't do the job or a reasonable accommodation was, in fact, offered to her? Well, clearly that's going to become relevant later on if we sue Heritage or UPMC on the basis of her claim. Right now we're just in an investigation. And we clearly – I mean, the Supreme Court has said a couple of times that the district court, when it's asked to enforce a subpoena, should not address whether that individual charge is meritorious. That's just – I mean, the district court's attempt here to tell us how we should investigate our charge, that we have to establish that there's a prima facie case or a good claim for Gailey before we can ask anything broader, that's just not the law. Any further questions? No, sir. Good. Thank you. Thank you. Good. The case was very well argued by both sides. Take the matter under advisement.